How are you going to allocate your time? I'm going to be spending five minutes addressing the First Amendment issues. My co-counsel, Clint, will spend four minutes on qualified immunity and due process, and then we'd like to reserve one minute for rebuttal. All right. Thank you. You may proceed. May it please the Court. My name is Catherine Eschbach, and together with my co-counsel, Clint Hale, we represent the appellant. This case arises because Mr. Falcon's birthday package was arbitrarily returned. Appellants would like to focus on the clearest First Amendment violation here, which pertains to the CD in the birthday present. Music is speech protected by the First Amendment. This Court has upheld the First Amendment right of prisoners to receive gift publications such as books and fictional novels, as it was in Crofton v. Rowe. And similarly here, the CD, even though it was sent by Mr. Falcon's family and they did not produce the content of it, is similarly protected speech by the First Amendment. The district court below stopped at the first step of the First Amendment analysis, which is, is there protected speech here? Say that again. The district court stopped at the first step of the First Amendment analysis, which is whether or not there was any protected speech in the birthday present. The Rock CD is protected speech. At bottom, this birthday present was mail. Prisoners have a First Amendment right to receive information through the mail. At the very least, can you explain to me how this vendor system works? Does the prisoner's family pick items and then the vendor packages them and sends them to the prisoner? That's my understanding, Your Honor. So they would have said, we want this CD, this particular music, and we want that sent to him? Yes, Your Honor. They would have had to have specifically chosen that CD to go to him. Okay, and what was the CD? What did it contain? All the record reflects is that it was a rock CD. A rock? You mean like? Rock music. Okay. And what if he had sent it to himself? Your Honor, that would probably be a different analysis. It probably wouldn't be speech? Well, in terms of any expressive elements in the larger package, it would be a different analysis. But if he'd ordered the rock CD himself, it would have protected speech on there.  But the rock CD alone would be similar to if a prisoner had ordered a book or a magazine and they were asserting a right to receive that information. Here this package was returned without notice and without any knowledge of the contents. There should at least be a presumption that a package received in the mail has some sort of first protection, given the clear holdings that prisoners have a First Amendment right to receive information in the mail. So did the district court not accept that this was protected by the First Amendment? That's correct, Your Honor. So they stopped there and they didn't get to whether or not the prison administration was acting arbitrarily? Or whether it had a legitimate penological. Yeah, they addressed some alternative findings, but the order itself stopped at saying there was no protected speech here. And then they said even if there was, there was a myriad of additional reasons. However, those reasons, as we've addressed in the briefing, the district court did not actually go into any sort of Turner analysis or different First Amendment general speech standard analysis here. So if we agree with you that this was, this package was protected by the First Amendment, do we need to remand to the district court to determine whether there were legitimate penological reasons for not delivering the package? Your Honor, that would be one option. There might also be a sufficient record here for the court to address whether or not there were legitimate penological interests. Notably, the government has raised in their briefing several interests. However, there is a question of fact as to what the actual interest motivating the package's return was. The, Mr. Falcone alleged that it was returned as part of a kickback scheme. The government, in the first instance when they explained why he was not receiving the package, said that it was because he was ineligible. Then in the internal grievance procedures, it became about health. And then only once it reached the district court were any of the safety or administrative rationales raised. Your Honor, at this time, with your permission, I'd like to invite my co-counsel up. Well, now there was a period he was disciplined. There seemed to be only 11 days in which this package could have been delivered. Is that right? That's correct, Your Honor. And you're saying delaying 11 days is a violation of the First Amendment? They must have been entitled to some delay. They can't do it instantly, can they? Your Honor, under the regulations, it's 15 days. But there's also a safe harbor provision under DOM 54030.8, which says any package that is received prior to a prisoner's change in disciplinary status is subject to be inventoried into their personal property until they become eligible to receive it again. Thank you, Your Honor. All right. Let's have Mr. Hale address that question. May it please the Court. Your Honor, this Court should vacate the judgment and remand this case so that Mr. Falcone has a formal opportunity to amend his complaint and add claims for the violation of his due process rights and to add Sergeant Marta as a defendant. The first due process... Can I ask you, was he pro se below? Yes, Your Honor. The first due process violation was for the violation of the minimum procedural safeguard of notice that his package was being withheld. And this was violated in two ways. First, Mr. Falcone was not notified when the prison decided to withhold his package. And second, he was not notified that they decided to return his package, that they didn't notify him before that so that he could have contested its return and prevented its return. And Mr. Falcone attempted to raise this claim in the district court in a supplementary opposition to summary judgment. And the magistrate judge acknowledged this as a due process claim, but declined to address it at that time, feeling that the defendants did not have adequate prior notice. However, this Court grants leave to amend when justice so requires and interprets that standard liberally with regard to pro se litigants, especially pro se prisoners like Mr. Falcone. How would justice so require, if we're just assuming it is speech, we determine that the institution of the defendants here had a legitimate penological interest in doing what it did? Mr. Falcone had a completely separate 14th Amendment due process liberty interest in the receipt of notice that his mail was being withheld. And that is recognized in Frost v. Symington. In that case, the Court found that there was valid penological interest for the return of the package, but still recognized that he had a due process liberty interest in receiving notice that it was being withheld. There was also a due process violation for the violation of the minimum procedural safeguard of two-level review, or review by an impartial prison official. Mr. Falcone should have received an initial impartial review. Instead, the first level of review was by Defendant Farley himself, and the next level of review was by Sergeant Marta, the person who ordered Farley to return the package. Thus, the initial two levels of review were by biased individuals who were reviewing their own decisions, and thus this tainted Falcone's entire prison appeals process so that he did not receive an impartial review. Additionally, Sergeant Marta should be added as a defendant, as he is the person who ordered the return of the package, and thus had a hand in depriving Mr. Falcone of his constitutional rights. And he could also be found liable under a theory of supervisory liability. Your Honors, I see I have about one more time, one more minute, if I could reserve that time for rebuttal, please. Is it? Do you have any more questions?  All right. Thank you. Yes, you may. Thank you, Your Honor. Good morning, Your Honor. May it please the Court, Jose Zola-Lanzapeta, Deputy Attorney General for Defendants. This case involves a straightforward application of well-established First Amendment principles in the prison context. And just… You need to speak up. I'm having trouble hearing you. I'm sorry, Your Honor. Slow down. Okay. I just wanted to emphasize a couple of key facts that are undisputed. One, the plaintiff, Mr. Falcone, was in, had received a disciplinary report before he, before the, at the time the package was sent to him. Wait a second. So he didn't, he received that 11 days after the package arrived? That is correct, Your Honor. Okay. So he, but he didn't even know he had a package, right? That is unclear from the record. The only person who would be able to know that, given the fact that he filed this complaint, would be Mr. Falcone, and there was nothing in the record about when he found out about the package. Why is that? Wasn't it, was this, this was summary judgment before he had an opportunity to really fully develop all these facts, right? That is correct. The, the focus of the, this goes back into the, the key aspect of the case in one, and the two questions are whether there is a First Amendment right to begin with, and that's why that was the focus of the summary judgment, and the question that was just... Hasn't our, doesn't our case law pretty much make it clear that the First Amendment is implicated by sending a package through the mail to a prison inmate? No, Your Honor. The case law says that the inmates have a right to the flow of information to receive and to get information, so therefore the question becomes whether an inmate personal comfort package... Well, I understand that the district court accepted your argument that this was just hygiene and comfort items, but it also contained a music CD, correct? That, that was the plaintiff's allegations, and I, I agree that the allegation that there was a CD would make, would make it a, would take it into a different type of the First Amendment analysis, but even, even under that allegation, the question then becomes whether the prison officials under Turner had a legitimate and logical interest in the actions that they took. Right, okay, but you're quarreling with our, you're saying that it wasn't protected by the First Amendment, and I'm questioning that. I think it pretty clearly was under our case law. I think focusing on the CD, it is. I agree with you, Your Honor. Well, no, even not focusing on the CD, I know that that's the focus that they took today, but I think we have precedent that says in Texas v. Johnson, it's a Supreme Court case that says that, you know, when the prisoner there received a birthday package, it's communicating a message of love and support. I mean, I don't know how this is different. I don't know if it was his birthday, but I don't know how this is different. So I'm not quite sure it hinges on the CD itself in light of Texas v. Johnson. What's your response to that? I'm sorry, Your Honor, I'm not familiar with Texas v. The Texas v. Johnson case that I'm familiar with involved a flag burning case, but maybe I'm not familiar with the specific one. I'd be more than happy to look into that. I'm sorry, that is the flag burning case. I'm sorry, but I'm using the flag burning case to say that it conveyed a message when burning the flag, but isn't conveying a message through a package similar? I submit to the Court that given the fact that we're talking about First Amendment rights in prison, which the Supreme Court and this Court's case law have made clear, that the Court analyzes how the First Amendment rights play out in prison, that the Court analyzes how the First Amendment rights play out in prison, and that the Court analyzes  That's what the Supreme Court says. It's not as simple as just saying is there an expressive conduct because then you go to the second step, which is under Turner v. Safley, the prison official side of the balance. Right, but you're separating the steps. You have to concede this is protected by the First Amendment, and then you argue that the protection is outweighed by the legitimate penological interests. And that's what the district court found, Your Honor. Right, but you're not going to concede that this was protected by the First Amendment?  individual's rights are protected by the First Amendment. And I understand and We weigh the constitutional right versus the interests of the prison administration, right? That is correct under the Turner analysis. So why do we weigh it at all if it's not protected by the First Amendment? That's what the district court found, and we submit to the Court that it's correct, but I understand that the Court disagrees with that. Wait a second. What about the law? What does the law say about this? Not what the district court found, not what your argument is, what the precedent says. Just to clarify, is your question regarding both just a personal comfort package I'm just wondering why the government, you're the state? That's correct. Why you can't concede that this was protected by the First Amendment and then argue your penological interests? Well, I'm trying to see if I can understand your question. I'm trying to dance around my question. Right, I'm trying to understand your question. Right, the question is I'm trying to understand if your question is just personal comfort packages in the abstract or a package that also included this CD with an expressive conduct because I think it's pretty clear that we think that our precedent, and so assume that. Okay, in that case I'll just go ahead into the Turner analysis. Yes. And I submit to the Court that under the district court's Turner analysis that the prison officials had a legitimate penological interest for the actions that they took, and I just wanted to correct something that I'm just wondering about the regulations themselves. How come a prisoner doesn't get notice that they've received a package? The regulations are unclear on this particular point. In terms of the way it works out in practice is because inmates, there's a number of different reasons why inmates might not be in their particular cell at the time, so sometimes inmates are out to court. But he was in his cell for 11 days, right? That is correct. And they have 15 days to deliver it, but he doesn't even know that there's a package there for him. That is unclear from the record, but it appears that that's the case. Given, like, I believe the district court said something to this point. Given the fact that it was only 11 days, that it was probably some sort of a processing issue in terms of how long it took to process the packages, and the record does show that there were a number of packages that were coming in at the time, and that the prison division dealing with these packages was having workload issues, and in terms of how much space was taken up. So is that, is it a legitimate penological interest? Is that, is it a justification that they're overworked, or they're not able to handle the work? Is that legitimate? If the focus is on the delay between when the package arrived to the prison and when the inmate received notice of it, is that, whether that, whether that is a legitimate penological interest? No, I mean, your argument in part, I understand your argument based on the regulations and how things are supposed to work, but the argument in part appears to be that this poor prison was overburdened. Is that a legitimate reason not to deliver a First Amendment-protected package? The Supreme Court has said that negligent deprivations that do not have any type of content-based types of concerns behind them are not a constitutional violation under the First Amendment. What about this allegation that there was some kind of kickback scheme going on? That is a very interesting point. The only point in plaintiff's filings where that appears is in a document that he submitted as part of his state tort claim. He never alleged that in either his complaint, in his amended complaint, or in his various pleadings to the district court, which were verified, and therefore there was no competent evidence to establish that. It would have been very easy for Mr. Falcone to submit his opposition to the Magistrate Judges of Finance and Recommendations or in his opposition to summary judgment and say there's this other added element to the case. Or he could have alleged that as part of his complaint, because presumably this took place before the whole problem with the package. And he never alleged that, and therefore the district court never had an opportunity to address that, and that's not properly before this Court, because there is no competent evidence to establish that. What the record does show, given Officer Farley's declaration under penalty of perjury, is that this package came in under the regulations. Mr. Falcone was not eligible to receive them, and therefore it was kept for a period of time, and at some point it was sent back to the vendor, and Mr. Falcone's family received a full refund of that. And therefore under those situations, whether under the prison regulations, whether those pass muster under the Turner v. Safley test. I wanted to point out Mr. Falcone's counsel mentioned that the district court did not reach the Turner analysis. It actually did do the Turner analysis at the extras of record 9 to 10. It talked about the prison's interest. It didn't just stop at saying there was no First Amendment interest. It said even if there is a First Amendment interest there, and went on to analyze the prison regulations and how they played out. In terms of the lead to amend issue, the due process aspect of the case was actually addressed by the district court in a footnote. It said Mr. Falcone had never alleged that he hadn't received notice that his package was there, and went on to analyze why this claim would fail, and therefore there's no lead to amend that's necessary at this point. Even if this court were to find that the prison official's actions were not valid under Turner v. Safley, we'd submit to the court that defendant is qualifiably immune because at the time he acted there was no clearly established case law that his actions violated the plaintiff's rights given that he was following the prison regulation. We pointed the court's attention to a case that deals with a very similar situation, Morrow v. Christ, in our answering brief. Unless there's any further questions. Well, the CD, I don't remember if you, did you acknowledge the CD is enough to be First Amendment speech? Yes, Your Honor. We're not saying that the CD would not be subject to, would not have a First Amendment interest. Okay. Unless there's any questions. Thank you. Your Honors, I'd just like to address a couple points on rebuttal. The record shows on page 23 that Mr. Falcone raised the fact that he did not have notice initially and as does the record on page 110 in opposition to summary judgment where he states the only reason he had notice of this package was the fact that he received an invoice from the vendor and several times attempted to contact the prison for a response on why he did not receive it and then only received notice after the package had been returned. When did he receive the invoice? In November. Okay. The package was returned at the end of December. Turning to the Turner analysis, if this court does analyze it, it should be remanded back to the district court to analyze that in the first instance because any interest that the court alleged as to this package, any of the safety and security interests are in regards to the broader class of packages. All packages received after inmates were subjected to Privilege Group D disciplinary status. Mr. Falcone's package falls into a very narrow safe harbor protected by DLM 54030.8 and as this court held in Morrison v. Hall in Prison Legal News v. Cook, the interests that the government alleges have to be proffered in regards to the class of mail that it falls in and this package falls within a different class. Mr. Falcone, because of the prison regulation DLM 54030.8, has alleged enough evidence. Under Jonas v. Buonas, this court says that prisoner pro se pleadings must be construed liberally, that any evidence submitted under personal knowledge and subject to perjury have to be construed as evidence against summary judgment and therefore remand is proper here. Thank you, Your Honors. Thank you very much. Dean, thank you. Thanks to Pepperdine for lending us your lost students. Okay, Falcone v. Farley will be submitted.
judges: Noonan, Wardlaw, Murguia